**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————

**No. 10-4957**

—————

UNITED STATES OF AMERICA,

            Plaintiff – Appellee,

      v.

MICHAEL UYIOGHOSA OHANGBON,

            Defendant – Appellant.

—————

Appeal from the United States District Court for the Middle
District of North Carolina, at Greensboro. Thomas D. Schroeder,
District Judge. (1:09-cr-00346-TDS-1)

—————

Submitted:  May 31, 2011            Decided:  June 14, 2011

—————

Before WILKINSON, DAVIS, and WYNN, Circuit Judges.

—————

Conviction affirmed, sentence vacated, and case remanded for
resentencing by unpublished per curiam opinion.

—————

David B. Freedman, CRUMPLER FREEDMAN PARKER & WITT, Winston-
Salem, North Carolina, for Appellant.  Ripley Rand, United
States Attorney, Michael F. Joseph, Assistant United States
Attorney, Greensboro, North Carolina, for Appellee.

—————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In October 2009, a federal grand jury charged Michael Uyioghosa Ohangbon with possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (2006) (Count One); maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1) (2006) (Count Two); possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (2006) (Count Three); and possession of a firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(5) (2006) (Count Four).

Ohangbon moved to suppress the evidence recovered from his vehicle following a traffic stop and from the subsequent search of his residence. The district court denied the motion, and thereafter Ohangbon pleaded guilty to Counts One and Three pursuant to a plea agreement.[1] He was sentenced to forty-two months' imprisonment. This appeal followed.

On appeal Ohangbon contends that the district court erred in denying his suppression motion because police lacked probable cause or reasonable suspicion to stop his vehicle. Ohangbon also asserts that the district court procedurally erred in sentencing when it enhanced his offense level by four levels.

---

[1] Ohangbon preserved his right to appeal the district court's ruling on the motion to suppress. Fed. R. Crim. P. 11(a)(2).

We affirm his convictions but vacate and remand for resentencing.

We review factual findings underlying the district court's denial of a motion to suppress for clear error and legal conclusions de novo. United States v. Blake, 571 F.3d 331, 338 (4th Cir. 2009), cert. denied, 130 S. Ct. 1104 (2010). A factual finding is clearly erroneous if this court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Harvey, 532 F.3d 326, 337 (4th Cir. 2008) (internal quotation marks omitted). However, "if the district court's account of the evidence is plausible in light of the record viewed in its entirety," we will not reverse the district court's finding even if we would have "decided the fact differently." United States v. Stevenson, 396 F.3d 538, 542 (4th Cir. 2005) (internal quotation marks and alteration omitted). In other words, when two views of the evidence are permissible, "the district court's choice between them cannot be clearly erroneous." Id. (internal quotation marks and alteration omitted).

We also defer to the district court's credibility determinations, "for it is the role of the district court to observe witnesses and weigh their credibility during a pre-trial motion to suppress." United States v. Abu Ali, 528 F.3d 210, 232 (4th Cir. 2008) (internal quotation marks omitted). We

3

construe the evidence in the light most favorable to the Government as the party prevailing below. United States v. Griffin, 589 F.3d 148, 150 (4th Cir. 2009), cert. denied, 131 S. Ct. 1599 (2011).

A traffic stop of a vehicle constitutes a seizure within the meaning of the Fourth Amendment and is permissible if the officer has either probable cause to believe a traffic violation has occurred, Whren v. United States, 517 U.S. 806, 809-10 (1996), or a reasonable suspicion of unlawful conduct, Terry v. Ohio, 392 U.S. 1, 20-22 (1968), regardless of the officer's subjective motivations, Whren, 517 U.S. at 810, 813-19. See United States v. Branch, 537 F.3d 328, 335 (4th Cir. 2008) ("Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop.").

Ohangbon identifies inconsistencies in the testimony of Detective Saintsing, the officer who conducted the traffic stop, concerning the alleged violations that led to the stop. He argues that Saintsing lacked a legitimate basis to initiate a stop and that the purported traffic violations relied upon by Saintsing were pretextual.

The district court acknowledged the inconsistencies in Saintsing's testimony but found:

4

any discrepancies in Saintsing's testimony do not undermine his credibility to the point of causing the court to reject it all. Based on the totality of the circumstances, the court finds Saintsing credible regarding the critical fact that he observed the Mercedes change lanes erratically, run off the road, and swerve within a lane during its travel down the highway.

Deferring to the district court's credibility determinations and viewing the evidence in the light most favorable to the Government, we conclude that Saintsing had reasonable suspicion to initiate a traffic stop notwithstanding the discrepancies Ohangbon identifies.

Ohangbon contends that, in any event, his movements did not violate North Carolina law because there was no testimony that he drove his vehicle so unsafely as to endanger another. We disagree. North Carolina law provides that drivers ensure their movements can be made in safety. See N.C. Gen. Stat. §§ 20-146(d)(1), 20-154(a) (2009). The law does not distinguish between the driver's own safety and the safety of other motorists. The district court thus did not err in concluding Detective Saintsing had reasonable suspicion that Ohangbon was violating North Carolina traffic laws. Ohangbon's erratic movements supplied a reasonable suspicion that he was not able or willing to determine whether his movements could be made in safety. Any subjective motivations Saintsing may have

5

had in stopping Ohangbon cannot alter this conclusion. <u>Whren</u>, 517 U.S. at 810, 813-19.

Ohangbon further argues that the illegible registration sticker on his license plate did not violate N.C. Gen. Stat. § 20-111(1), (2) (2009), because he did not act willfully. Because Ohangbon's erratic driving alone supplied Saintsing with reasonable suspicion to initiate the traffic stop, we need not reach this issue.

Next, Ohangbon argues that the district court committed procedural error at sentencing when it misapplied the advisory Sentencing Guidelines. Specifically, he argues that the district court erred when it applied a four-level enhancement to his offense level based on its finding that he possessed a firearm in connection with another felony offense. <u>See</u> <u>U.S.</u> <u>Sentencing Guidelines Manual</u> ("USSG") § 2K2.1(b)(6) (2009).[2]

The Guidelines allow for a four-level increase of a defendant's offense level where "the defendant used or possessed any firearm or ammunition in connection with another felony offense." USSG § 2K2.1(b)(6). A firearm is possessed in connection with another offense if the firearm "facilitated, or had the potential of facilitating," the other offense. USSG

---

[2] The search of Ohangbon's residence disclosed illicit drugs in his bedroom and two handguns in his garage.

6

§ 2K2.1 cmt. n.14(A). "This requirement is satisfied if the firearm had some purpose or effect with respect to the other offense, including if the firearm was present for protection or to embolden the actor." United States v. Jenkins, 566 F.3d 160, 162 (4th Cir. 2009) (internal quotation marks, citations, and alterations omitted). Here, the district court, relying on United States v. Manigan, 592 F.3d 621 (4th Cir. 2010), among other cases, concluded that the Government had established the applicability of the four-level enhancement.

The district court erred, however, in reaching its finding, by substituting the standards applicable to an enhancement under § 2D1.1(b)(1) to one applicable under § 2K2.1(b)(6).[3] Those provisions are not interchangeable. Manigan, for example, concerned the application of USSG § 2D1.1(b)(1), which applies to an individual convicted of a narcotics offense while in possession of a weapon; in contrast, § 2K2.1(b)(6) applies to an individual convicted of a firearms offense who used or possessed a firearm "in connection with another felony offense." USSG § 2K2.1(b)(6). Section

---

[3] Although Ohangbon failed to present this precise argument, we exercise our discretion to reach it because the broader issue of the appropriateness of the § 2K2.1(b)(6) enhancement cannot be addressed without setting forth the appropriate standard. See U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 448 (1993); United States v. Heater, 63 F.3d 311, 331 n.5 (4th Cir. 1995).

7

2D1.1(b)(1) provides for a two-level enhancement while § 2K2.1(b)(6) provides for a four-level enhancement.

The different penalties in § 2D1.1(b)(1) and § 2K2.1(b)(6) are reflected in their elements and shifting burdens. A two-level enhancement under § 2D1.1(b)(1) is proper where the Government proves "[a] weapon was present;" it then falls to the defendant to prove that "it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1 cmt. n.3. In contrast, a § 2K2.1(b)(6) enhancement will apply only if the Government proves that "the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively." USSG § 2K2.1 cmt. n.14(a). See United States v. Nale, 101 F.3d 1000, 1004 (4th Cir. 1996) (disapproving of analogizing "in connection with" language in § 2K2.1(c) to § 2D1.1(b)(1) and placement of burden an defendant to show no "connection"). Here, although it purported to apply § 2K2.1(c), the district court adverted to the "shifting burden" standard applicable to the two-level enhancement provided in § 2D1.1(b)(1), stating, "the Court finds that the Defendant has not carried the burden of demonstrating that it was clearly improbable that the handguns were not used in connection with the drug activity." J.A. 122-23.

For the reasons set forth above, we affirm Ohangbon's convictions. However, because it appears that the district

8

court erroneously applied the "shifting burden" approach of §
2D1.1(b)(1) to impose a four-level enhancement under §
2K2.1(b)(6), we vacate Ohangbon's sentence as procedurally
unreasonable. We remand for resentencing consistent with the
views expressed in this opinion.[4] We dispense with oral argument
because the facts and legal contentions are adequately presented
in the materials before the court and argument would not aid the
decisional process.

CONVICTION AFFIRMED, SENTENCE VACATED,
AND CASE REMANDED FOR RESENTENCING

---

[4] By this disposition, we indicate no opinion as to the appropriateness of a four-level enhancement under § 2K2.1(b)(6) assessed under the proper standard.